UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSEPH J. SAVIANO, JR.,          :
                                 :
     Plaintiff,                  :
                                 :
V.                               :   CASE NO. 3:04-CV-522(RNC)
                                 :
TOWN OF WESTPORT,                :
                                 :
     Defendant.                  :

RULING AND ORDER

Plaintiff Joseph Saviano, Jr. brings this action against the Town of Westport, his former employer, claiming that the defendant terminated his employment in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(4). He alleges that he opposed employment practices made unlawful under those statutes when he filed union grievances on behalf of a disabled co-worker, and that the defendant retaliated against him by terminating his employment. The defendant has moved for summary judgment. The motion is granted as to the claims under the ADA and the Rehabilitation Act, and I decline to exercise jurisdiction over the CFEPA claim, which is dismissed without prejudice.

I.   Background

A threshold issue is whether the summary judgment record should be deemed to include plaintiff's memorandum in opposition

and supporting documents, which were submitted after the deadline for filing opposition papers expired.  Plaintiff previously moved for leave to file these papers, but the motion was denied. Plaintiff seeks reconsideration of that ruling, which defendant opposes.

The standard for granting a motion for reconsideration is strict, and the motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). No such matters are present here.[1]  The motion for reconsideration is therefore denied.

---

[1] The Court denied plaintiff's motion for leave to file opposition papers after the deadline because, in granting plaintiff's third motion to extend the deadline, the Court had issued an order stating unequivocally that "No further extensions of this deadline will be granted." (Doc. # 57).  Plaintiff's counsel states that the email notice she received of the entry of the order granting the motion for extension of time did not include the quoted language and that she did not undertake to read the order itself due to the press of other business. Crediting counsel's explanation, I have considered whether it shows "excusable neglect" under Fed. R. Civ. P. 6(b). "[E]xcusable neglect" is a somewhat "elastic concept," Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392 (1993), but it does not extend to sheer oversight because if it did, "the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced."  See Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003).  Accordingly, I find that the excusable neglect standard is not satisfied in the circumstances presented here.

The pleadings, depositions, affidavits and other exhibits on file, viewed most favorably to plaintiff, show the following. Plaintiff was employed by defendant from 1977 until 2002. At the time of his termination, he was the Assistant Superintendent of Greens of the Longshore Golf Course in defendant's Department of Parks and Recreation, and the President of Local 1303-194, American Federation of State, County and Municipal Employees, AFL-CIO.

As part of his job, plaintiff supervised a laborer named Steven, who had certain mental and physical disabilities. In his capacity as union president, plaintiff filed a series of grievances on Steven's behalf when Steven was subjected to discipline.

On April 21, 1999, plaintiff and his supervisor, Daniel Rackliffe, had an argument. Plaintiff then drove to First Selectwoman Diane Farrell's office and left her a note with a reference to committing suicide or homicide. He was placed on leave until June 14, 1999. After he obtained a written opinion from his psychiatrist that he posed no danger to himself or others, he returned to work.

On July 23, 1999, plaintiff filed a grievance on his own behalf, stating that he was being disciplined, harassed, and discriminated against because of his "union activities." (Farrell Aff., Ex. D.) On November 21, 2001, plaintiff injured his back,

3

requiring surgery and time off from work, as well as a reduced schedule and restriction on his activities following his return to work on July 8, 2002.[2]

In August 2002, Rackliffe returned from vacation to find the golf course in poor condition. He accused plaintiff of sabotaging the course, and an investigation took place. The investigators found no sabotage but recommended that plaintiff be demoted and transferred to a nonsupervisory position. (Farrell Aff., Ex. K.)

In September 2002, Rackliffe and plaintiff got into another argument. Rackliffe asked plaintiff when he was going to start treating him with respect, and plaintiff replied, "Are you going to stop treating me like your little nigger?" (Def.'s L. R. 56(a)(1) Statement, Saviano Dep. at 22.) Plaintiff repeated the "n-word" three times. (Id. at 23.) Rackliffe told plaintiff that he was going to suspend him for using racial slurs.

On October 7, 2002, Stuart McCarthy, the Director of the Parks and Recreation Department, sent Farrell a letter recommending that plaintiff's employment be terminated based on insubordination and use of racial slurs. Farrell sent plaintiff a letter informing him of her intention to terminate his

---

[2] Plaintiff does not allege that he was disabled. His claims focus solely on the actions he took on behalf of Steven. The parties do not dispute that Steven was disabled within the meaning of the ADA.

4

employment subject to his right under the Town Charter to a hearing before the Board of Selectmen. The letter stated that he was being terminated for various reasons including lack of professionalism, disruptive conduct and attitude, insubordination, and discriminatory racial remarks. (Farrell Aff., Ex. N.) After a hearing, the Board of Selectmen voted unanimously to uphold Farrell's decision to terminate plaintiff's employment. After filing claims with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission, plaintiff obtained right to sue letters and filed this suit.

II. Discussion

    A. Standard

To obtain summary judgment, the Town has the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).[3] The court must review the record as a whole, credit all evidence favoring the nonmovant, give the nonmovant the benefit of all reasonable inferences, and disregard all evidence favorable to the movant that a jury would not have to believe.

---

[3] When a timely response to a summary judgment motion has not been filed, the court must still examine the movant's submissions to determine if this burden has been met. See Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001); see also Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004).

5

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).

B. Retaliation Under the ADA and Rehabilitation Act

Under the ADA, an employer may not "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a)(2000). The Rehabilitation Act contains similar provisions. See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

As in cases brought under Title VII, to establish a prima facie case of retaliation under the ADA, plaintiff must show the following: "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Id. See also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).

One engages in protected activity by opposing employment practices that are unlawful under the ADA. See Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996). Plaintiff need not show "that the conduct he opposed was actually a violation of the [ADA] so long as he can establish that he

6

possessed a good faith reasonable belief that the underlying challenged actions of [defendant] violated [the ADA]." Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999) (internal citations omitted). To prove that the employer was aware of the protected activity, the plaintiff must prove that the employer "understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by [the statute]." Galdieri-Amrosini, 136 F.3d at 292.

Plaintiff has failed to set forth a prima facie case of retaliation. The record is insufficient to support a reasonable finding that when he filed union grievances on Steven's behalf, he had a good faith, reasonable belief that he was protesting statutorily prohibited disability discrimination. Even assuming, moreover, that he had such a belief, he has failed to establish that there is a genuine issue of material fact with respect to whether the defendant understood, or reasonably cold have understood, that the grievances concerned disability discrimination.

The record shows that the defendant disciplined Steven several times for unreported absences from work, refusing to perform assignments and petty theft. (Compl. ¶¶ 21, 25, 27.) As the union president, plaintiff filed grievances alleging that the discipline violated the collective bargaining agreement between

the Town and the union.  (See McCarthy Aff., Ex. Q.)  The collective bargaining agreement did not contain an anti-discrimination provision (see Castelot Aff. ¶¶ 9, 11) and the grievances that plaintiff filed on behalf of Steven made no reference to discrimination.

A plaintiff does not engage in protected activity when he files a union grievance that does not specifically allege discrimination.  See Lewis v. Conn. Dep't of Corr., 355 F. Supp. 2d 607, 617 (D. Conn. 2005) (filing union grievance did not constitute protected activity because grievance did not "explicitly allege racial discrimination"); see also Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 594 (2d Cir. 1988) (plaintiff failed to establish prima facie case because his objections "neither pointed out discrimination against particular individuals nor discriminatory practices by Columbia, as they were alleged"); Miller v. Edward Jones & Co., 355 F. Supp. 2d 629, 643 (D. Conn. 2005) ("complaints concerning unfair treatment in general which do not specifically address discrimination are insufficient to constitute protected activity") (internal quotation omitted); Castro v. N.Y. City Bd. of Educ. Personnel Dir., No. 96 Civ. 6314(MBM), 1998 WL 108004, at *8 (S.D.N.Y. March 12, 1998) ("[I]t appears that none of plaintiff's union grievances included charges of discrimination. . . . Accordingly, the lodging of these grievances does not

constitute a 'protected activity' within the meaning of the discrimination laws and, therefore, does not give rise to a claim of retaliation.").

III. Conclusion

Accordingly, the motion for summary judgment (doc. # 31) is hereby granted.  The federal claims are dismissed with prejudice based on plaintiff's failure to establish a prima facie case.  The court declines to exercise jurisdiction over the state law claim, which is dismissed without prejudice.  The Clerk may close the file.

So ordered.

Dated at Hartford, Connecticut this 3rd day of March 2007.


_____/s/_____
Robert N. Chatigny
United States District Judge